JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GILBERT DOMINGUEZ, <br>     Plaintiff, <br><br>         v. <br><br> ESTES EXPRESS LINES, INC. and G.I. TRUCKING COMPANY, dba ESTES WEST, <br>     Defendants. | 2:25-cv-10514-DSF-MAR <br><br> Order GRANTING Plaintiff's Motion to Remand (Dkt. 26) |

Defendants Estes Express Lines and G.I. Trucking Company d/b/a Estes West removed this employment discrimination action based on federal question jurisdiction under the federal Employee Retirement Income Security Act of 1974 (ERISA).  Dkt. 2 (NOR).  Plaintiff Estate of Gilbert Dominguez moves to remand.  Dkt. 26 (Mot.).  Defendants oppose.  Dkt. 27 (Opp'n).  For the reasons below, the Estate's motion is GRANTED.

## I. Background

According to the Estate's Third Amended Complaint (TAC), decedent Gilbert Dominguez, a former employee of Defendant Estes Express Lines, Inc., was severely injured while working at a trucking terminal on December 4, 2017.  Dkt. 2, Ex. D (TAC) ¶¶ 1-3. Dominguez's injuries ultimately resulted in his death on October 28, 2019.  Id. ¶ 3.  On October 29, 2019, Dominguez's daughter contacted Estes on behalf of the Estate regarding her father's employment, and

was informed, for the first time, that Dominguez had been terminated from work based on his inability to return from leave and that the Estate was not entitled to any back income or funeral costs.  Id. ¶ 7.  Dominguez and his family had been unaware of his termination.  Id. ¶ 8.

The Estate sued Defendants, alleging, among other things, causes of action under California law for wrongful discharge, physical disability discrimination, and negligence.  TAC ¶¶ 26-103.

This case was originally removed on September 7, 2022 based on ERISA jurisdiction.  Estate of Gilbert Dominguez, et al. v. Estes Express Lines, Inc., et al., No. CV 22-6399 DSF (MARx), ECF No. 1.  After removal, the plaintiffs[1] "expressed their intention to eliminate their claims for recovery of those benefits and seek remand to state court."  Dominguez, No. CV 22-6399 DSF (MARx), slip op. at 1 (C.D. Cal. Mar. 8, 2023).  They subsequently filed a Second Amended Complaint consistent with their representations, and the Court remanded the case to Los Angeles Superior Court.  Id. at 1-2.

Defendants have once again removed the case—this time, because the Estate, in a response to Defendants' request to produce "all documents relating to the calculation of Plaintiff's damages," indicated that "all that is at issue is the failure to pay an insurance policy worth $400,000[.]"  NOR at 10 (citing Dkt. 2, Ex. J (Declaration of Garrett V. Jensen), Ex. 1 (Plaintiff's Further/Supplemental Responses to Defendants' Request for Production)).  Defendants assert that federal question jurisdiction exists because the "reference to the alleged $400,000 death benefit owed to Plaintiff under the terms of decedent

---

[1] The action originally included the claims of Dominguez's wife, Claudia Dominguez, in her individual capacity, in addition to the Estate, but according to an exhibit attached to the NOR, those claims have since been dismissed.  Dkt. 2, Ex. E (Joint Stipulation to Strike References to ERISA Benefits and Dismiss Claudia Dominguez's Individual Capacity Claims).

2

Dominguez's purported life insurance policy is an ERISA governed
benefit."  NOR at 10.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess
only that power authorized by Constitution and statute[.]"  <u>Kokkonen
v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).  A defendant may
remove an action to federal court if the federal court could exercise
subject matter jurisdiction over the action.  28 U.S.C. § 1441(a).  "The
removal statute is strictly construed against removal jurisdiction," and
"[t]he defendant bears the burden of establishing that removal is
proper."  <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d
1083, 1087 (9th Cir. 2009).  If a defendant fails to meet its burden of
establishing subject matter jurisdiction, the suit must be remanded.  28
U.S.C. § 1447(c).  Generally, doubts as to removability are resolved in
favor of remanding the case.  <u>See</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>,
313 U.S. 100, 108-109 (1941); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566
(9th Cir. 1992).

## III. Discussion

The Estate first argues that its well-pleaded complaint presents
only state-law claims.  Mot. at 5-6.  Ordinarily, the "presence or
absence of federal-question jurisdiction is governed by the 'well-pleaded
complaint rule,' which provides that federal jurisdiction exists only
when a federal question is presented on the face of the plaintiff's
properly pleaded complaint."  <u>Caterpillar Inc. v. Williams</u>, 482 U.S.
386, 392 (1987).  "The existence of a federal defense normally does not
create statutory 'arising under' jurisdiction, . . . and a defendant may
not generally remove a case to federal court unless the *plaintiff*'s
complaint establishes that the case 'arises under' federal law."  <u>Aetna
Health Inc. v. Davila</u>, 542 U.S. 200, 207 (2004) (citation modified).

"There is an exception, however, to the well-pleaded complaint
rule.  When a federal statute wholly displaces the state-law cause of
action through complete pre-emption, the state claim can be removed.
This is so because when the federal statute completely preempts the

state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.  ERISA is one of these statutes."  Id. at 207-08 (citation modified).  "[I]f an individual, at some point in time, [1] could have brought his claim under ERISA § 502(a)(1)(B), and [2] where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)," and federal question jurisdiction exists over the cause of action.  Id. at 210.  "The two-prong test of Davila is in the conjunctive.  A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied."  Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 947 (9th Cir. 2009).  "To show removal jurisdiction on the basis of complete preemption, a defendant must cite to the complaint, the state statute on which the claim is based, and the plan documents."  Hansen v. Grp. Health Coop., 902 F.3d 1051, 1059 (9th Cir. 2018).

As an initial matter, Defendants "have not clearly understood the difference between complete preemption under ERISA § 502(a), 29 U.S.C. § 1132(a), and conflict preemption under ERISA § 514(a), 29 U.S.C. § 1144(a)."  Marin, 581 F.3d at 944-45.  Though Defendants note that "[s]tate law causes of action filed in state court that are preempted by ERISA and fall within the scope of ERISA § 502(a)(1)(B) may be removed to federal court," NOR at 12, they do not apply the Davila complete preemption test analyzing whether a claim is "within the scope of ERISA," but instead apply the test for the affirmative defense of preemption under ERISA § 514(a), Opp'n at 10-16.  Like the defendants in Marin, Defendants here "contend that because the state action 'relates to' [an] ERISA plan, it is completely preempted."  Marin, 581 F.3d at 949.  But "[t]his argument is based on a misunderstanding of complete preemption under § 502(a)(1)(B). . . .  [T]he question whether a law or claim 'relates to' an ERISA plan is not the test for complete preemption under § 502(a)(1)(B).  Rather, it is the test for

4

conflict preemption under § 514(a)," which "does not provide a basis for federal question jurisdiction under either § 1331(a) or § 1441(a)." Id.[2]

## A.   Davila's First Prong

Turning to the first prong of Davila, the question is "whether a plaintiff seeking to assert a state-law claim 'at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B).'" Marin, 581 F.3d at 947 (alteration in original) (quoting Davila, 542 U.S. at 210). Section 502(a)(1)(B) provides: "A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Davila's first prong therefore hinges on whether the Estate is "a participant or beneficiary" who may bring a claim under § 502(a). Id.[3]

At the June 15, 2026 hearing on the motion, the parties stipulated that the Estate is a plan participant that may bring a claim under § 502(a).[4] But the claim Defendants assert the Estate could have brought—a claim under ERISA §§ 502(a) and 510—fails under the second prong of Davila.

## B.   Davila's Second Prong

"The question under the second prong of Davila is whether 'there is no other independent legal duty that is implicated by a defendant's actions.'" Marin, 581 F.3d at 949 (quoting Davila, 542 U.S. at 210). In

---

[2] The affirmative defense of ERISA preemption is not before the Court, and the Court does not address it.

[3] A claim under ERISA § 510 has the same requirement. See 29 U.S.C. 1140 ("The provisions of [ERISA § 502] shall be applicable in the enforcement of this section.").

[4] Defendants request that the Court take judicial notice of their Group Long Term Disability Insurance Certificate and the Certificate of Coverage provided by the life insurance company The Guardian. Dkt. 27-1. The Estate does not oppose. The Court grants the request.

other words, the "controlling question" is "whether a claim relies on the violation of a legal duty that arises independently of the plaintiff's . . . ERISA plan." Hansen, 902 F.3d at 1059. "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." Id. (quoting Marin, 581 F.3d at 949). "The relevant inquiry . . . focuses on the *origin* of the duty, not its relationship with health plans." Id. at 1060.

"This question requires a practical, rather than a formalistic, analysis because '[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.'" Fossen v. Blue Cross & Blue Shield of Mont., Inc., 660 F.3d 1102, 1110-11 (9th Cir. 2011) (alteration in original) (quoting Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1225 (9th Cir. 2005)). But "[i]t is not enough for complete preemption . . . that ERISA § 502(a)(1)(B) may provide a similar remedy." Marin, 581 F.3d at 950.

Defendants contend that the Estate is really making a claim that Defendants terminated Dominguez in order not to pay benefits—a claim that falls within the scope of ERISA § 510.[5] Opp'n at 18-19. In the TAC, the Estate alleges that Defendants wrongfully terminated Dominguez's employment "based on his disabled status." TAC ¶ 28. Though there were some lingering allegations concerning Dominguez's benefits, the parties filed a joint stipulation in which the Estate agreed to strike all such references and that it would "not seek recovery of any benefits covered by ERISA in this action." Dkt. 2, Ex. E.

Disregarding the references to Dominguez's benefits that were stricken by stipulation by the parties, the Estate's claims are based on the allegation that Dominguez was wrongfully terminated because of his disability and are premised on state-law duties. The Estate's first

---

[5] Section 510 provides, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140.

and second causes of action for wrongful discharge and physical disability discrimination are premised on allegations that Defendants "were motivated by a discriminatory animus against [Dominguez]," TAC ¶ 28, that is, "the deep animus they bore against people with disability," id ¶ 43.  The third and fourth causes of action for failure to prevent/remedy discrimination and negligent supervision focus on Defendants' alleged failure "to prevent or remedy this discriminatory behavior."  Id. ¶ 58; accord id. ¶ 70.  The fifth and sixth causes of action concern Defendants' alleged failure to accommodate Dominguez's disability.  Id. ¶¶ 80, 93.  None of these claims "requir[e] judicial review of the Plan's terms."  McGill v. Pac. Bell Tel. Co., 139 F. Supp. 3d 1109, 1120 (C.D. Cal. 2015).  And Defendants offer no evidence that the state-law duties underlying the Estate's claims—including those asserted under California's Fair Employment and Housing Act—derive from the ERISA plan at issue.  Instead, a state court will determine whether Defendants' termination of Dominguez was impermissibly based on his disability, whether Defendants took steps to prevent the alleged discrimination, and whether Defendants accommodated Dominguez's disability.  Such claims "do not rely on, and are independent of, any duty under an ERISA plan" and "would exist whether or not an ERISA plan existed[.]"  Marin, 581 F.3d at 949-50.

Rather than "cite to the complaint, the state statute on which the claim is based, and the plan documents," Hansen, 902 F.3d at 1059, Defendants cite to (1) one of the Estate's pre-removal discovery responses and (2) the parties' post-removal Rule 26(f) joint report.  The Court addresses each in turn.

First, Defendants rely on the Estate's discovery response to their request for the production of documents relating to "the calculation of all damages referenced or requested in the COMPLAINT."  Dkt. 2, Jensen Decl., Ex. 1 at 2.  The Estate stated in its discovery response:

> [T]he precise calculation of economic damages is **expert-driven** . . . .  That said, [the Estate] acknowledge[s] [its] damages arise primarily from:

1. There was no pension and all that is at issue is the failure to pay an insurance policy worth $400,000; and

2. The severe emotional distress suffered as a result of Defendant's [sic] termination of [Dominguez] while disabled.[6]

To the extent available, [the Estate] will produce W-2 for 2017 and 2018, check and Tax info for 2012 and 22015 [sic]. [The Estate] has requested Related employment records and the insurance policy and will produce these additional documents as they become available.

Id. at 3. According to Defendants, the clause, "all that is at issue is the failure to pay an insurance policy worth $400,000," in the Estate's discovery response transforms the Estate's claims into one "seeking an ERISA covered benefit." NOR at 11-13. But Defendants fail to explain how this component of potential damages is relevant to whether there is not "some other independent legal duty beyond that imposed by an ERISA plan." Hansen, 902 F.3d at 1059 (quoting Marin, 581 F.3d at 949). Indeed, courts "do not ask whether that legal duty provides for a similar remedy, such as the payment of money," but "only whether 'there is no other independent legal duty that is implicated' by a defendant's actions." Marin, 581 F.3d at 950.

Second, Defendants quote the Estate's statement in a post-removal joint Rule 26(f) report to argue that "[b]ased on the pleadings and other binding statements and admissions by the Plaintiff, 'Gilbert Dominguez was wrongfully terminated in order to prevent payment of any benefits.'" Opp'n at 13 (quoting Dkt. 18 (Rule 26(f) Report) at 6). But Defendants fail to provide any support for the claim that

---

[6] Defendants represent that the Estate's reference to damages based on severe emotional distress is erroneous because the state court had already stricken emotional distress damages from the lawsuit. NOR at 10 n.5 (citing Dkt. 2, Ex. I (Order on Motion to Strike)). The Estate has not disputed Defendants' representation.

statements made in a joint report are binding or constitute judicial admissions.  Courts have found the opposite to be true.  See, e.g., Alevy v. Seneca Ins. Co. Inc., No. CV 11-08593 GAF (SSx), 2012 WL 13012460, at *14 (C.D. Cal. Sept. 18, 2012) (citing Clausen Miller, P.C. v. Citibank, N.A., 738 F. Supp. 2d 850, 854 (N.D. Ill. 2010)).[7]  The Estate represents that the Rule 26(f) report does not constitute "an amendment to the complaint" and reiterates that it "explicitly dismissed all ERISA claims with prejudice and stipulated to waive any ERISA recovery."  Dkt. 28 (Reply) at 7.  Defendants do not identify any other operative allegation supporting the claim that Dominguez was terminated in order to prevent payment of benefits.[8]

Defendants also argue, "As recently made clear by the [Ninth Circuit] in Bristol, an independent legal duty exists only in the

---

[7] While "[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them," "statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988). Unlike an argumentative brief, however, the purpose of the Rule 26(f) report is merely to "assist the court in seeing that the timing and scope of disclosures . . . and the limitations on the extent of discovery under [the Federal Rules of Civil Procedure] and local rules are tailored to the circumstances of the particular case."  Fed. R. Civ. P. 26(f) advisory committee's note to 1993 amendment.  Even if the Court were to consider the joint report to be a "brief" under Lacelaw, the Estate's full statement—that "Plaintiff claims that Gilbert Dominguez was wrongfully terminated in order to prevent payment of any benefits," dkt. 18 at 6—is a summary characterization of the Estate's claims rather than a pure factual assertion. The Court declines to treat it as a binding judicial admission.

[8] At the motion hearing on June 15, 2026, and in Defendants' opposition, Defendants reference prior complaints.  But a superseded pleading "ceases to be a conclusive judicial admission[.]"  Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996) (citation omitted).  Defendants conceded at the motion hearing that the operative TAC does not contain allegations that Defendants terminated Dominguez so as not to pay his benefits.

complete absence of an ERISA plan—such as when the parties to the lawsuit have no connection to an ERISA plan." Opp'n at 17 (citing Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co., 103 F.4th 597, 606 (9th Cir. 2024)). But Defendants misstate the test under Davila's second prong, and Bristol concerns the affirmative defense of ERISA preemption, not the analysis for ERISA complete preemption to support removal jurisdiction. Bristol, 103 F.4th at 602 (analyzing ERISA preemption under § 514(a)). As in Marin, "Defendants . . . continue to confuse conflict preemption under § 514(a) with complete preemption under § 502(a)(1)(B). It is not enough for complete preemption that the [state-law] claims 'relate to' the underlying ERISA plan, or that ERISA § 502(a)(1)(B) may provide a similar remedy." Marin, 581 F.3d at 950.[9]

Defendants cite two cases in which the court found the defendant to have satisfied Davila's second prong. Opp'n at 19 (citing Washington v. AT & T Corp., No. C 10-03751 LB, 2011 WL 233004 (N.D. Cal. Jan. 24, 2011); Caponio v. Boilermakers Local 549, No. 16-cv-03919-VC, 2017 WL 1477133 (N.D. Cal. Apr. 25, 2017)[10]). Both cases included operative allegations that the plaintiffs were denied ERISA benefits. See Washington, 2011 WL 233004 (The operative complaint alleged, "Defendants further [harassed]/[discriminated against]/[retaliated against] Plaintiff for taking medical leave when on January 12, 2009

---

[9] Several of the other cases Defendants cite for Davila's second prong also analyze the affirmative defense of preemption, not complete preemption for removal jurisdiction, and are therefore inapposite. See Opp'n at 17-19 (citing Scotti v. Los Robles Regional Ctr., 117 F. Supp. 2d 982 (C.D. Cal. 2000); Felton v. Unisource Corp., 940 F.2d 503, 510 (9th Cir. 1991); Greaney v. W. Farm Bureau Life Ins. Co., 973 F.2d 812 (9th Cir. 1992); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003 (9th Cir. 1998); Caponio v. Boilermakers Local 549, No. 16-cv-03919-VC, 2017 WL 1477133 (N.D. Cal. Apr. 25, 2017)).

[10] Though Caponio concerned the affirmative defense of preemption, rather than apply the ERISA preemption statute ERISA § 514(a), the court there applied the two-prong ERISA complete preemption analysis under Davila. Caponio, 2017 WL 1477133, at *1-2.

they denied his short term disability claiming his medical condition did not meet the criteria." (alteration in original)); <u>Caponio</u>, 2017 WL 1477133, at *1-2 (plaintiff alleged that the defendant "denied her the benefits of a joint apprenticeship program," which was "an ERISA plan."). Here, however, the Estate agreed to "strike all references to disability, life insurance, and other benefits" covered under ERISA contained in the TAC and agreed not to "seek recovery of any benefits covered by ERISA in this action." Dkt. 2, Ex. E. As a result, nothing in the operative TAC indicates that the alleged state law duties are dependent on any ERISA plan.

The Court finds that Defendants have not satisfied <u>Davila</u>'s second prong with respect to any of the Estate's claims. Because both prongs must be satisfied for ERISA complete preemption, the Court concludes that it does not have subject-matter jurisdiction over this case.[11]

## IV. Conclusion

For the foregoing reasons, the Estate's motion to remand is GRANTED. The case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

Date: June 24, 2026

_____
Dale S. Fischer
United States District Judge

---

[11] The Estate requests attorneys' fees for the first time in the conclusion of its reply. Reply at 8-9. But the "district court need not consider arguments raised for the first time in a reply brief." <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007). Moreover, given the representations the Estate has made in this case, the Court does not find Defendants' motion to lack an "objectively reasonable basis for seeking removal" to warrant fee shifting. <u>Martin v. Franklin Cap. Corp.</u>, 546 U.S. 132, 141 (2005).

11